IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA MARIE CLARK,                        06-CV-6002-BR

       Plaintiff,                   OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.


ALAN STUART GRAF
P.O. Box 98
Summertown, TN 38483

      Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1  -  OPINION AND ORDER

**MICHAEL McGAUPHRAN**
Office of the General Counsel
**DAVID M. BLUME**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075

      Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Teresa Clark brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    For the reasons that follow, the Court **AFFIRMS** the Commissioner's final decision.

## BACKGROUND

    Clark was born on September 20, 1973.  She has a high school education and has worked as a childcare monitor, motel house-keeper, assistant manager of a second-hand store, checker/cashier in a convenience store, and waitress.  Clark last worked on January 28, 2002, providing childcare in her home for three neighbor children.  This employment ended because the neighbor family moved out of town.  She was never fired from a job, and she got along well with supervisors and the public.

2  -  OPINION AND ORDER

Clark alleges she became disabled on September 19, 2002, due to losing consciousness without warning, lack of coordination, headaches, and anxiety.

## DISABILITY ANALYSIS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. § 416.920.  Clark challenges the ALJ's evaluation of the evidence and conclusions at Steps Four and Five.

To make findings at Steps Four and Five, the ALJ must first assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related activities the claimant still can do on a regular and continuing

basis despite her limitations.  20 C.F.R. § 416.945(a).  *See also*
Social Security Ruling (SSR) 96-8p.

At Step Four, the Commissioner must determine whether the
claimant retains the RFC to perform work that she has done in the
past.  20 C.F.R. § 416.920(e).  The claimant is not disabled if
she can perform her past work.

If the adjudication reaches Step Five, the Commissioner must
determine whether the claimant is able to do any work in the
national economy.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20
C.F.R. § 416.920(e),(f).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Yuckert*, 482 U.S. at
141-42.  If the Commissioner meets this burden, the claimant is
not disabled.  20 C.F.R. § 416.920(f)(1).

## **ALJ'S FINDINGS**

The ALJ found Clark's ability to perform basic, work-related
activities limited by orthostatic hypotension, headaches,
depression, anxiety, and a history of substance abuse in apparent
remission.  He assessed Clark's RFC as follows:

> The claimant retains the residual functional
> capacity to perform heavy work.  She should
> have no quick movements or changes in
> position, and she should move slowly with any
> postural changes.  She should have no

frequent interaction with the public or co-workers, and no complex tasks due to headaches.

Tr. 19.[1]

The ALJ found Clark's past work as a motel housekeeper did not require work functions that were precluded by her RFC. Accordingly, at Step Four the ALJ concluded Clark was not disabled because she could do her past work.

Although the ALJ was not required to continue to Step Five, he found Clark retained the RFC to perform other work in the national economy in addition to her past work. The ALJ relied on testimony from an impartial vocational expert (VE), who opined that a person of Clark's age, education, past work experience, and RFC could work as a tray setter and cleaner/janitor.

Accordingly, the ALJ concluded Clark was not under a disability at any time through the date of the ALJ's decision and was not eligible for SSI payments under Title XVI of the Social Security Act.

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Clark contends the ALJ failed to accurately assess her RFC because the ALJ improperly rejected the opinion of Pamela Joffe, Ph.D., and failed to give sufficient weight to evidence that Clark suffered from disabling fainting spells from September 2002 until they were properly diagnosed in May 2004.

## I.   Psychological Evaluations of Dr. Joffe

Dr. Joffe performed a psychological evaluation of Clark on May 10, 2003.  She reviewed Clark's neurology records, conducted a clinical interview, administered a test of intellectual functioning and part of a standard memory scale, and received

self-reported inventories for depression and personality assessment.

Clark related she had never been fired and got along well with supervisors and the public in her past work.  She reported frequent episodes of fainting and said she feared passing out in public.  Clark also described childhood abuse by her stepfather and adult abuse by her husband.

On testing, Clark had IQ scores in the average range with strengths in concentration and attention, short-term recall, ability to complete tasks found in work settings, mental control, and ability to work with numbers.

Clark endorsed 32 items on the self-reporting depression inventory indicating severe depression.  On the self-reporting Personality Assessment Inventory, Clark had a profile suggesting she tried to portray herself in a negative light, tended to focus on physical health problems, and had impaired concentration and attention due to anxiety.

Dr. Joffe diagnosed major depressive disorder and anxiety disorder with symptoms of post-traumatic stress disorder associated with her history of abuse.  Dr. Joffe assigned a global assessment of functioning (GAF) score of 45 indicating serious symptoms.  Tr. 162-69.

Dr. Joffe performed an updated psychological evaluation on July 2, 2005.  She reviewed her previous evaluation, but no other

7  -  OPINION AND ORDER

records.  She performed another clinical interview and retested Clark with parts of a standard memory scale and the self-reporting depression and personality inventories administered before.

Clark reported medications had improved her headaches, depression, and anxiety.  Her fainting spells had turned out to be nothing more than orthostatic hypotension that Clark could avoid by merely getting up more slowly from a seated position. She reported fairly typical activities at home, including cooking, doing crafts and hobbies, attending school conferences, and driving a car.  She reported nervousness and confusion in public places such as grocery stores.

Objective tests showed Clark was fully oriented and her memory was intact.  Clark endorsed 42 items on the self-reporting depression scale suggesting that her depression had become more severe contrary to her subjective report that it had improved. Her self-reporting on the personality assessment yielded a questionably valid profile that suggested she was defensive about some shortcomings and exaggerated some of her problems. Dr. Joffe opined the "clinical elevations may over-represent her actual symptoms in some areas" and noted the "possibility of negative distortion."  Tr. 240.

Dr. Joffe diagnosed post-traumatic stress disorder with agoraphobia, major depression with psychotic features, and

dependent and avoidant personality features.  She assigned a GAF score of 40 to 45 indicating serious symptoms, serious impairment in social and occupational functioning, and major impairment in thinking and mood.  Tr. 240-43.

The ALJ gave Dr. Joffe's reports careful attention and some weight, but he found them not entirely persuasive regarding Clark's functional ability.  Tr. 15-18.

If an examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).  An ALJ can reject the opinion in favor of the conflicting opinion of another treating or examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Id*. at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ noted Dr. Joffe's opinion included a vocational component that was outside of her expertise and unsupported by the record.  Dr. Joffe based her assessment on her belief that "[Clark's] fear of people, combined with her inexperience will make obtaining and sustaining employment difficult."  Tr. 168.

The ALJ properly did not find any evidence that Dr. Joffe had the vocational expertise to evaluate the impact of Clark's work experience on her ability to obtain or to sustain work.  In

addition, the record does not support Dr. Joffe's conclusion that fear of people posed a serious impediment to Clark's employment. Moreover, that conclusion is contradicted by Clark's own report that she got along well with supervisors and the public in her past work.  The third-party statement of Clark's mother also indicated that Clark got along well with others.

Both Clark and her mother indicated Clark's main difficulty with work was fear of fainting in public without warning rather than fear of people.  Dr. Joffe mistakenly believed Clark's fainting episodes were related to anxiety and panic around other people.  In fact, the episodes resulted from standing too quickly with orthostatic hypotension.

The ALJ also noted Dr. Joffe accepted Clark's subjective self-reporting at face value.  The ALJ discounted Clark's credibility based on adequate analysis, which Clark does not challenge.  For example, Clark's personality inventory suggested that she exaggerated some of her problems and portrayed herself in a negative light.  Dr. Joffe admitted her findings might over-represent Clark's actual symptoms due to negative distortion.  In addition, the ALJ noted Clark's criminal history reflected poorly on her credibility.

An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaint of disabling symptoms that the ALJ has properly discounted.  *Fair v.*

*Bowen*, 885 F.2d 597, 605 (9ᵗʰ Cir. 1989.  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9ᵗʰ Cir. 2001).

The ALJ found the record as a whole demonstrated that Clark functioned better than she described to Dr. Joffe.  For example, Clark's employment history shows she was capable of work despite her allegations of life-long psychological impairments.  Clark did not report any problems in her past work.  She was never fired and did not stop working due to her impairments, but rather because her employer moved.

Similarly, Clark's treatment history did not support Dr. Joffe's opinion of Clark's functional limitations.  In October 2002, Clark appeared to be aware of the nature of her fainting spells.  She reported to her treating Nurse Practitioner that she had episodes of lightheadedness "when she stands up quickly from a seated position."  Tr. 122.

William McConochie, Ph.D., performed a Complete Psychodiagnostic Evaluation of Clark in April 2003. Dr. McConochie noted Clark felt she did not need any counseling despite her claims of depression and anxiety.  Her mental-status examination was generally within normal limits.  On Daily Adaptation measures, Clark showed poor motivation to work, but she felt she was adequate on "basic self-care, mental aptitudes, social skills and job persistence and productivity and miscellaneous job duties."  Tr. 160.

11 -  OPINION AND ORDER

The treating Psychiatric Mental Health Nurse Practitioner who managed Clark's treatment at Options Counseling Services noted her anxiety and mood continued to improve with medication. Tr. 210.  She described Clark as "verbal social with slight anxiety."  Tr. 213.

The state-agency reviewing psychologists opined evidence in the record supported the presence of mental impairments that did not preclude Clark from performing simple tasks in routine settings where close interpersonal contact was not required.  Tr. 189-91.  After this assessment, Clark reported psychotropic medications were helping considerably to improve her mood and activity level.

In summary, the ALJ's written decision demonstrates he gave due consideration to Dr. Joffe's evaluations, but found they were inconsistent with the record as a whole.  The ALJ concluded the record as a whole, including the opinions of other physicians, nurse practitioners, and mental health providers; the reports of Clark and her mother; and Clark's work and treatment history indicated Clark functioned better than Dr. Joffe opined.

The ALJ's conclusion reasonably resolves the conflicts between the record as a whole and the opinion of Dr. Joffe and is supported by a reasonable interpretation of substantial evidence in the record.  The ALJ's conclusion, therefore, must be upheld even if the evidence could be rationally interpreted differently

as Clark asserts.  *See Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001).  *See also Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

Accordingly, the Court finds the ALJ did not err because he articulated legally adequate reasons for discounting Dr. Joffe's opinion.

## II.  **Fainting spells**

The ALJ found Clark's fainting or dizzy spells are caused by orthostatic hypotension and adequately controlled by getting up slowly from a seated position.  The ALJ noted the spells are not caused by any mental impairment as Clark initially reported to her health providers.

Clark contends the ALJ should have found her disabled due to the fainting spells from the alleged onset of disability in September  2002 until the treating nurse practitioner diagnosed postural hypotension in May 2004.

Clark's argument, however, is not supported by the record. In October 2002, Clark was taking Paxil for lightheadedness that had been associated, incorrectly it is now known, with anxiety and panic.  Clark reported continuing "episodes of lightheadedness when she stands up quickly from a seated position."  Tr. 122.  The ALJ reasonably could conclude Clark associated these episodes of lightheadedness to quick postural

changes soon after the alleged onset of disability.  He also reasonably could conclude Clark understood this relationship long before the diagnosis of postural hypotension appeared in the treatment records.

The ALJ's conclusion that the fainting spells were adequately controlled without medical treatment by simple behavioral changes is supported by substantial evidence in the record.  The Court, therefore, finds Clark has not carried her burden to prove that she suffered from disabling fainting spells during the period from September 2002 until May 2004.  *See Roberts v. Shalala*, 66 F.3d at 182.

Accordingly, the Court concludes the ALJ's interpretation of the evidence is reasonable and cannot be overturned even if Clark asserts another reasonable interpretation.  *See Edlund,* 253 F.3d at 1156.  *See also Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 12th day of December, 2006.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

14 -  OPINION AND ORDER